IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| THE STATE OF LOUSIANA,<br>By and through its Attorney General,<br>Elizabeth B. Murrill;<br>THE STATE OF KANSAS,<br>By and through its Attorney General,<br>Kris W. Kobach;<br>THE STATE OF OHIO,<br>By and through its Attorney General,<br>Dave Yost; and<br>THE STATE OF WEST VIRGINIA,<br>By and through its Attorney General,<br>John B. McCuskey,<br><br>    *Plaintiffs*,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF COMMERCE;<br>GINA M. RAIMONDO, in her official capacity as Secretary of Commerce;<br>BUREAU OF THE CENSUS, an agency within the United States Department of Commerce; and<br>ROBERT L. SANTOS, in his official capacity as Director of the U.S. Census Bureau,<br><br>    *Defendants*. | Case No. 6:25-cv-00076-DCJ-DJA |

**MOTION TO INTERVENE**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

BACKGROUND ............................................................................................................................... 3

LEGAL STANDARD ........................................................................................................................ 5

ARGUMENT .................................................................................................................................... 6

    I.    Proposed Intervenors are entitled to intervention as of right. ........................................... 6

        A.    This motion is timely. ................................................................................................. 6

        B.    Proposed Intervenors maintain significant interests in this action. .......................... 7

        C.    The disposition of this case may impair Proposed Intervenors' significant interests. ................................................................................................................... 8

        D.    No other party adequately represents Proposed Intervenors' interests. .................. 9

    II.    Proposed Intervenors satisfy the requirements for permissive intervention. .................... 10

CONCLUSION .............................................................................................................................. 11

CERTIFICATE OF SERVICE AND CONSENT SOUGHT ...................................................................... 13

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Brumfield v. Dodd*,
    749 F.3d 339 (5th Cir. 2014) ............................................................................................... 7

*City of San Jose v. Trump*,
    497 F. Supp. 3d 680 (N.D. Cal. 2020) ......................................................................... 1, 4, 8

*La Union del Pueblo Entero v. Abbott*,
    29 F.4th 299 (5th Cir. 2022) ........................................................................................ *passim*

*Miller v. Vilsack*,
    No. 21-11271, 2022 WL 851782 (5th Cir. Mar. 22, 2022)................................................... 5

*New York v. Trump*,
    485 F. Supp. 3d 422 (S.D.N.Y. 2020)................................................................................. 4

*Ross v. Marshall*,
    426 F.3d 745 (5th Cir. 2005) ............................................................................................. 11

*Rotstain v. Mendez*,
    986 F.3d 931 (5th Cir. 2021) ............................................................................................... 6

*Texas v. United States*,
    805 F.3d 653 (5th Cir. 2015) ...................................................................................... 1, 7, 8

*Trbovich v. United Mine Workers of Am.*,
    404 U.S. 528 (1972)........................................................................................................... 10

*Trump v. City of San Jose, California*,
    141 S. Ct. 1231 (2020)..................................................................................................... 1, 4

*Trump v. New York*,
    592 U.S. 125 (2020).............................................................................................. 1, 3, 4, 8

*U.S. Dep't of Commerce v. U.S. House of Reps.*,
    525 U.S. 316 (1999).......................................................................................................... 7, 9

*Useche v. Trump*,
    No. 8:20-cv-02225-PX-PAH-ELH, 2020 WL 6545886, (D. Md. Nov. 6, 2020).......... 1, 4, 8

*Utah Ass'n of Cntys. v. Clinton*,
    255 F.3d 1246 (10th Cir. 2001) ......................................................................................... 10

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*,
 834 F.3d 562 (5th Cir. 2016) ....................................................................................... 6, 11

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. XIV, § 2 ................................................................................................. 3

**STATUTES**

13 U.S.C. § 141(a) ................................................................................................................. 3

Alien Registration Act of 1940, Pub. L. No. 76-670, 54 Stat. 670 (1940) ........................... 3

**OTHER AUTHORITIES**

*Excluding Illegal Aliens from the Apportionment Base Following the 2020 Census*,
 85 Fed. Reg. 44,679 (July 23, 2020) ............................................................................... 4

Fed. R. Civ. P. 24(a) ......................................................................................................... 5, 11

Fed. R. Civ. P. 24(b) ....................................................................................................... 10, 11

Final 2020 Census Residence Criteria and Residence Situations Rule,
 83 Fed. Reg. 5525-01 (Feb. 8, 2018) ............................................................................... 3

Initial Rescissions of Harmful Executive Orders & Actions,
 The White House (Jan. 20, 2025), https://whitehouse.gov/presidential-
 actions/2025/01/initial-rescissions-of-harmful-executive-orders-and-actions/ ........... 2, 5, 10

W.D. La. Local Rule 7.6 ........................................................................................................ 2

Proposed Intervenors are two California and three Texas voters. They seek to intervene in this action to protect their congressional and Electoral College representation in what Plaintiffs allege is a "zero-sum" competition where "one state's gain is another state's loss." Compl. ¶ 37. Plaintiffs seek changes to the 2030 Census that they say would take away congressional and Electoral College representation from California and Texas voters like Proposed Intervenors, *see id.* ¶ 56 & at 31, in order to provide additional representatives to voters in one or more of the Plaintiff States, *id.* ¶¶ 55, 57, 63. As multiple courts recognized in prior litigation over this very issue, a reduction in a state's representation is a concrete injury that gives its citizens Article III standing. *See Useche v. Trump*, No. 8:20-cv-02225-PX-PAH-ELH, 2020 WL 6545886, at *4–7 (D. Md. Nov. 6, 2020), *vacated and remanded* 141 S. Ct. 1231 (2020); *City of San Jose v. Trump*, 497 F. Supp. 3d 680, 702, 705, 710 (N.D. Cal. 2020), *vacated and remanded*, 141 S. Ct. 1231 (2020). Under that same rationale, Proposed Intervenors easily satisfy the mere "interest" required to support intervention here. *See Texas v. United States*, 805 F.3d 653, 658–59 (5th Cir. 2015) (holding that "interest" requirement need not rise to level of injury needed to show standing).

To be sure, the Supreme Court vacated the decisions in *Useche* and *San Jose*, explaining that the entire dispute was "riddled with contingencies and speculation" because it was not yet clear whether the President would in fact seek to exclude any noncitizens from the census count, and if so which ones. *See Trump v. New York*, 592 U.S. 125, 131–34 (2020) (per curiam). For the same reason, Plaintiffs' claims in this case should ultimately be dismissed: Plaintiffs challenge the not-yet-promulgated rules that will govern a 2030 Census to be conducted by a not-yet-elected presidential administration that will not take office until 2029. But unless and until the case is dismissed, Proposed Intervenors are entitled to intervene to defend their interests in the "zero sum" apportionment process in which Plaintiffs expressly seek to reduce Texas and California's

1

congressional and Electoral College representation. Compl. ¶¶ 37, 56, 63. Nothing in the Supreme Court's decision in *Trump v. New York* suggests any disagreement with the *Useche* and *San Jose* courts' straightforward conclusion that a threatened reduction in congressional apportionment is a concrete legal harm sufficient to confer standing, not to mention the lesser "interest" needed to intervene.

Proposed Intervenors also meet the other requirements for intervention of right. This motion is timely, following a mere ten days after Plaintiffs filed suit and before anything has happened in the case. And no party represents Proposed Intervenors' interests in preserving Texas and California's congressional and Electoral College representation. Not Plaintiffs, who expressly seek to reduce that representation. And not Defendants, who do not share Proposed Intervenors' interest in maintaining fair representation in Congress and the Electoral College. In fact, Defendants are unlikely to defend this case at all. President Trump has previously sought to exclude non-citizens from apportionment and has already taken actions to try to do so again. *See* Initial Rescissions of Harmful Executive Orders & Actions, The White House (Jan. 20, 2025), https://whitehouse.gov/presidential-actions/2025/01/initial-rescissions-of-harmful-executive-orders-and-actions/ (rescinding Executive Order No. 13986).

Alternatively, the Court should grant Proposed Intervenors permissive intervention. They raise defenses such as lack of standing, ripeness, and failure to state a claim which are inextricably intertwined with issues previewed in the Complaint, and their participation will enhance the Court's ability to resolve those issues without causing any undue prejudice or delay.

Because all elements of intervention are satisfied, the motion should be granted.[1]

---

[1] As required by Local Rule 7.6, Proposed Intervenors presented their proposed Answer to counsel for Plaintiffs and sought consent to this motion. Counsel for Plaintiffs oppose intervention. Proposed Intervenors have not been able to identify counsel for Defendants to seek their position.

## BACKGROUND

Plaintiffs seek to restrict who may be counted in the next decennial census that will determine apportionment of congressional representation and Electoral College votes. But the Fourteenth Amendment is clear as can be: apportionment must be based on a count of "the whole number of *persons* in each State, excluding Indians not taxed." U.S. Const. amend. XIV, § 2 (emphasis added). "Persons" means persons, not citizens; when the drafters of the Fourteenth Amendment meant citizens, they said so. *See id.* (repeatedly referring to "citizens" instead of "persons" where applicable). And "persons" certainly does not mean "citizens and lawful permanent residents," as Plaintiffs say, Compl. at 4, because the latter is a statutory immigration-law category that did not exist in any form when the Fourteenth Amendment was ratified in 1868. *See* Alien Registration Act of 1940, Pub. L. No. 76-670, 54 Stat. 670 (1940) (requiring non-citizen residents to register with the federal government for the first time). No doubt for that reason, from the founding to today, the census has always counted people without regard to their citizenship or immigration status. *See Trump*, 592 U.S. at 145–46 (Breyer, J., dissenting) (citing sources).

Plaintiffs frame this case as a challenge to the "Residence Rule," a 2018 regulation promulgated in advance of the 2020 Census. *See* Final 2020 Census Residence Criteria and Residence Situations Rule, 83 Fed. Reg. 5525-01 (Feb. 8, 2018). As its title suggests, however, the Residence Rule governed only the 2020 Census. The Rule explains that "[e]very decade, the Census Bureau undertakes a review of the Residence Criteria and Residence Situations." *Id.* at 5526. And it made clear that its rules about non-citizens would apply "[f]or the 2020 Census," *id.* at 5530, "to determine where people are counted during the 2020 Census," *id.* at 5533. The 2020 Census is over, and a new decennial census will not be conducted until 2030. *See* 13 U.S.C. § 141(a).

3

After the issuance of the Residence Rule, the issue of counting non-citizens in the 2020 Census became the subject of substantial litigation. In July 2020, President Trump issued a Presidential Memorandum stating that—notwithstanding the Residence Rule issued by his own administration—"[f]or the purpose of the reapportionment of Representatives following the 2020 census, it is the policy of the United States to exclude from the apportionment base aliens who are not in a lawful immigration status." *Excluding Illegal Aliens from the Apportionment Base Following the 2020 Census*, 85 Fed. Reg. 44,679, 44,680 (July 23, 2020). An array of states, organizations, and individuals immediately brought actions challenging the legality of that Memorandum. Three separate federal courts held that the Presidential Memorandum was unlawful. *See New York v. Trump*, 485 F. Supp. 3d 422, 468–77 (S.D.N.Y. 2020); *City of San Jose*, 497 F. Supp. 3d at 716–743; *Useche*, 2020 WL 6545886, at *12–13. Without opining on the merits, the Supreme Court vacated and remanded each of these holdings for lack of standing and ripeness because they were "premature" and relied on "contingencies and speculation" regarding how the Presidential Memorandum would be implemented. *See Trump*, 592 U.S. at 131–34; *Trump v. City of San Jose, California*, 141 S. Ct. 1231 (2020); *Trump v. Useche*, 141 S. Ct. 1231 (2020). Ultimately the apportionment was conducted without regard for immigration status, as it always has been throughout all of American history.

Five years later, Plaintiffs filed this case on the last business day of the Biden Administration, alleging that the Residence Rule is unconstitutional because it provides for the counting of residents other than "U.S. citizens and lawful permanent residents" (such as undocumented immigrants or temporary visa holders). Compl. at 4. Plaintiffs seek declaratory relief that the Residence Rule is unlawful. Plaintiffs assert that any future apportionment "that does not use the best available methods to exclude illegal aliens and nonimmigrant aliens from the

apportionment base . . . would be unconstitutional." Compl. at 31. They also request injunctive relief requiring the Census Bureau to ask about each person's citizenship status in the 2030 Census and beyond. *Id.* Just days after this action was filed, the Trump Administration took office and, on its very first day, revoked a related Biden Administration executive order that required persons to be counted regardless of immigration status. *See* Initial Rescissions of Harmful Executive Orders & Actions, The White House (Jan. 20, 2025), https://whitehouse.gov/presidential-actions/2025/01/initial-rescissions-of-harmful-executive-orders-and-actions/ (rescinding Executive Order No. 13986). This motion to intervene follows ten days after Plaintiffs filed suit.

## LEGAL STANDARD

Under Rule 24, the court "must" permit anyone to intervene who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Even if a proposed party is not entitled to intervention as of right, the court "may" permit intervention where the movant "has a claim or defense that shares with the main action a common question of law or fact," so long as intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." *Id.* 24(b)(1), (3).

"It is the movant's burden to establish the right to intervene, but Rule 24 is to be liberally construed." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022) ("*LUPE*") (cleaned up) (reversing denial of intervention). "Federal courts should allow intervention where no one would be hurt and the greater justice could be attained." *Id.* (cleaned up); *see also see Miller v. Vilsack*, No. 21-11271, 2022 WL 851782, at *4 (5th Cir. Mar. 22, 2022) (reversing denial of intervention and noting Fifth Circuit's "broad policy favoring intervention" and the intervenors' "minimal" burden).

# ARGUMENT

## I. Proposed Intervenors are entitled to intervention as of right.

Rule 24 requires courts to grant intervention where four elements are satisfied:

(1) the application for intervention must be timely;

(2) the applicant must have an interest relating to the property or transaction which is the subject of the action;

(3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; and

(4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*LUPE*, 29 F.4th at 305. Proposed Intervenors meet each of these requirements, so this Court must grant intervention.

### A. This motion is timely.

Courts consider four factors to determine whether a motion to intervene is timely: "the length of time the movant waited to file, the prejudice to the existing parties from any delay, the prejudice to the movant if intervention is denied, and any unusual circumstances." *Rotstain v. Mendez*, 986 F.3d 931, 937 (5th Cir. 2021). This motion is undoubtedly timely, as the complaint was filed merely ten days ago, there is not yet a scheduling order, and this is the first motion to be docketed. Because there has been no delay, Plaintiffs cannot claim any prejudice from delay; Proposed Intervenors, in contrast, would be severely prejudiced if intervention is denied, as explained below. In short, this motion is filed well within the period that courts consider timely. *See, e.g., Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565–66 (5th Cir. 2016) (reversing denial of intervention and deeming motion to intervene timely even when filed after discovery had commenced).

### B.     Proposed Intervenors maintain significant interests in this action.

Proposed Intervenors have a direct cognizable interest in the number of Congressional seats and electoral votes apportioned to California and Texas, satisfying the second requirement for intervention as of right. This element does not require movants to identify a property interest, pecuniary interest, or even a legally enforceable interest. *Texas*, 805 F.3d at 658–59. Rather, "an interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim." *Id.* Additionally, Rule 24(a)'s "interest requirement may be judged by a more lenient standard if the case involves a public interest question." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) (cleaned up) (reversing denial of intervention).

Proposed Intervenors easily satisfy this lenient element. It is well-settled that "voters have standing to challenge an apportionment statute because '[t]hey are asserting a plain, direct and adequate interest in maintaining the effectiveness of their votes.'" *U.S. Dep't of Commerce v. U.S. House of Reps.*, 525 U.S. 316, 331–32 (1999) (quoting *Baker v. Carr,* 369 U.S. 186, 208 (1962)). As registered voters in California and Texas, Proposed Intervenors maintain an interest in this action, which directly threatens the apportionment of congressional districts and electoral votes to their states. If Plaintiffs are successful in obtaining declaratory relief, then any apportionment "that does not use the best available methods to exclude illegal aliens and nonimmigrant aliens from the apportionment base . . . would be unconstitutional." Compl. at 31. And, should the Court agree with Plaintiffs and set aside the Residence Rule "insofar as it permits or requires the Census Bureau to include illegal aliens and nonimmigrant aliens in the apportionment base used to apportion congressional seats and Electoral College votes," then, according to Plaintiffs, California and Texas would each stand to lose a congressional seat and electoral vote. *Id.*; *see also id.* ¶¶ 56 ("As a result of the inclusion of illegal aliens in the 2020 Census, Texas gained one congressional seat

and one electoral vote, and California kept a congressional seat and an electoral vote that it would have otherwise lost."), 66 ("[E]xcluding illegal aliens from the apportionment base would reduce representational inequality between the Plaintiff States and the states, like California, with large populations of illegal aliens counted in the census.").

Multiple federal courts have recognized that individual voters have Article III standing based on the threat of reduced apportionment that would follow from the exclusion of undocumented immigrants from the "persons" on which apportionment is based. *See Useche*, 2020 WL 6545886, at *4–*7 ("When a state anticipates losing a seat in Congress, that diminishment of political representation is a concrete injury suffered by both the state itself and its citizens." (cleaned up)); *City of San Jose*, 497 F. Supp. 3d at 702, 705, 710 (also recognizing apportionment harm as basis for standing for individual voters). The Supreme Court ultimately vacated those decisions as not ripe because of "contingencies and speculation" regarding whether and how the Census would ultimately be conducted, *Trump*, 592 U.S. at 131, 134, but it said nothing to cast doubt on the straightforward conclusion that a reduction in congressional or Electoral College representation is a concrete legal harm. Proposed Intervenors' threatened apportionment harm is therefore an interest "of the type that the law deems worthy of protection," which is a lower threshold than the Article III standing at issue in *Useche* and *San Jose*. *Texas*, 805 F.3d at 658–59.

### C. The disposition of this case may impair Proposed Intervenors' significant interests.

To satisfy the third element, Proposed Intervenors "need only show that if they cannot intervene, there is a possibility that their interest could be impaired or impeded." *LUPE*, 29 F.4th at 307. Here, the possibility of impairment is extremely high. This action seeks to enjoin the Department of Commerce and the Census Bureau to ask "each person . . . on the 2030 and subsequent Censuses" if they are a citizen or lawful permanent resident, and to declare that "any

8

apportionment . . . that does not use the best available means to exclude illegal aliens and nonimmigrant aliens from the apportionment base used to apportion congressional seats and Electoral College votes among the states would be unconstitutional." Compl. at 31. If successful, then according to Plaintiffs themselves, California and Texas would each lose a congressional seat and electoral vote. *See id.* at ¶¶ 56, 66. Thus, the disposition of this case would impair Proposed Intervenors' interest in maintaining the effectiveness of their votes and cause apportionment harm. *See, e.g.*, *U.S. Dep't of Commerce*, 525 U.S. at 331–32.

Even if Plaintiffs' allegations regarding the future impact on apportionment turn out to be inaccurate, at present there is an indisputable "*possibility*" that Proposed Intervenors' interests "*could be* impaired or impeded." *LUPE*, 29 F.4th at 307 (emphases added). The Complaint explicitly seeks to "reduce representational inequality between the Plaintiff States and the states, like California, with large populations of illegal aliens counted in the census" by excluding undocumented immigrants from the apportionment base. Compl. ¶ 63. And the Complaint cites the 2000, 2010, and 2020 Censuses to show that such exclusion would change the number of congressional seats and electoral votes apportioned to states like California and Texas. *See id.* at ¶¶ 40–63. Any relief that Plaintiffs achieve would change who is included in the Census and consequently threatens apportionment harms for California and Texas. Thus, the significant impairment that Plaintiffs' action threatens is sufficient to warrant intervention under this element.

### D. No other party adequately represents Proposed Intervenors' interests.

Finally, the existing parties to this action will not adequately represent Proposed Intervenors' interests. Proposed Intervenors "'need not show that the representation by existing parties will be, for certain, inadequate,' but instead that it *may* be inadequate." *LUPE*, 29 F.4th at 307–08 (quoting *Texas*, 805 F.3d at 661). The Supreme Court has explained that "the burden of

9

making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).

Here, Proposed Intervenors do not have "the same ultimate objective as a party to the lawsuit," and their "'interest is in fact different from that of the' governmental party" named as defendant, so there is no presumption in favor of adequate representation. *LUPE*, 29 F.4th at 308 (quoting *Texas*, 805 F.3d at 661–62). Proposed Intervenors oppose Plaintiffs' requested relief. And, unlike Proposed Intervenors, the Federal Defendants do not have any particular interest in the size of the congressional representation of any given communities or states. Therefore, only Proposed Intervenors would represent the "parochial interest[s]" of voters in their congressional districts in California and Texas. *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1255–56 (10th Cir. 2001). Moreover, Proposed Intervenors cannot expect that the Federal Defendants will defend the 2018 Residence Rule at all. On January 20, 2025, President Trump rescinded an executive order issued by former President Biden that prohibited the exclusion of persons from the census count based on their immigration status. *See* Exec. Order No. 13986, 86 Fed. Reg. 7015, 2021 WL 229391, (Jan. 20, 2021); Initial Rescissions of Harmful Executive Orders & Actions, The White House (Jan. 25, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/initial-rescissions-of-harmful-executive-orders-and-actions/. Because this policy shift aligns the Defendants with the relief requested by Plaintiffs, Proposed Intervenors' interests in vigorously defending the 2018 Registration Rule will not be adequately represented by Defendants. Without Proposed Intervenors, there may be no one opposing Plaintiffs' claims.

## II. Proposed Intervenors satisfy the requirements for permissive intervention.

Rule 24 also authorizes courts to grant permissive intervention to proposed intervenors who may not qualify as of right. Fed. R. Civ. P. 24(b). "Permissive intervention is left to the

discretion of the district court, and is appropriate when the intervention request is timely, the intervenor's 'claim or defense and the main action have a question of law or fact in common,' and granting intervention will not unduly delay or prejudice the original parties in the case." *United States v. City of New Orleans*, 540 F. App'x 380, 381 (5th Cir. 2013) (quoting Fed. R. Civ. P. 24(b)(2)). As with intervention as of right, the rule on permissive intervention "is to be liberally construed." *Wal-Mart Stores*, 834 F.3d at 565 (quoting *Texas*, 805 F.3d at 656). "Intervention should generally be allowed where no one would be hurt and greater justice could be attained." *Ross v. Marshall*, 426 F.3d 745, 753 (5th Cir. 2005) (cleaned up).

Proposed Intervenors check each of these boxes. This motion remains timely, as the case has only just begun. The thrust of their anticipated defenses—that Plaintiffs' claims are not ripe, Plaintiffs lack standing, fail to state a claim, and seek relief inconsistent with federal law and the United States Constitution—is inextricably bound up with the legal and factual issues presented by the main action. And granting intervention will not unduly delay or prejudice the original parties. Proposed Intervenors' participation in this case will simply ensure that a robust defense of longstanding Census apportionment rules and procedures is offered by the very voters who stand to be most adversely affected by their invalidation.

## CONCLUSION

For the reasons stated above, Proposed Intervenors respectfully request that the Court grant their motion to intervene as a matter of right under Rule 24(a)(2), or, in the alternative, permit them to intervene under Rule 24(b).

Respectfully submitted this 27th day of January, 2025.

*s/ John Adcock*

John Adcock
Adcock Law LLC
3110 Canal Street
New Orleans, LA 70119
Tel: (504) 233-3125
jnadcock@gmail.com

*s/ David R. Fox*

David R. Fox*
ELIAS LAW GROUP LLP
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
(202) 968-4490
Daniel Cohen*
William Hancock*
ELIAS LAW GROUP LLP
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
(202) 968-4490
dfox@elias.law
dcohen@elias.law
whancock@elias.law

* *Pro hac vice* application forthcoming

Counsel for Proposed Intervenors

**CERTIFICATE OF SERVICE AND CONSENT SOUGHT**

      I hereby certify that on January 27, 2025, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, and that service will be provided through the CM/ECF system. Additionally, counsel for Plaintiffs were advised by electronic email on January 27, 2025, of this filing and were provided with Proposed Intervenors' proposed Answer. Counsel for Plaintiffs indicated they oppose intervention. Counsel for Defendants have not yet appeared in this case.

                                                                  *s/ John Adcock*
                                                Counsel for Proposed Intervenors