FIN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| THE STATE OF LOUISIANA, By and through its Attorney General, Elizabeth B. Murrill; <br> THE STATE OF KANSAS, By and through its Attorney General, Kris W. Kobach; <br> THE STATE OF OHIO, By and through its Attorney General, Dave Yost; and <br> THE STATE OF WEST VIRGINIA, By and through its Attorney General, John B. McCuskey <br><br> *Plaintiffs*, <br><br> vs. <br><br> UNITED STATES DEPARTMENT OF COMMERCE; JEREMY PELTER, in his official capacity as Acting Secretary of Commerce; <br> BUREAU OF THE CENSUS, an agency within the United States Department of Commerce; and <br> ROBERT L. SANTOS, in his official capacity as Director of the U.S. Census Bureau <br><br> *Defendants*. | Case No.: 6:25-cv-0076-DCJ-DJA <br><br> Judge David C. Joseph <br> Magistrate Judge David J. Ayo |

**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE OF THE LEAGUE OF WOMEN VOTERS, THE LEAGUE OF WOMEN VOTERS OF FLORIDA, AND THE LEAGUE OF WOMEN VOTERS OF NEW YORK STATE**

1

Table of Contents

INTRODUCTION ........................................................................................................................... 5

ARGUMENT .................................................................................................................................. 8

   I. Proposed Intervenors are entitled to intervene as of right. ....................................................... 8

      A. This motion is timely. ........................................................................................................ 8

      B. Proposed Intervenors have a legally protectable interest .................................................. 10

      C. The disposition of this case may impair Proposed Intervenors' interests. ........................ 13

      D. Proposed Intervenors' interests are not adequately protected .......................................... 13

   II. In the alternative, the Court should grant permissive intervention ....................................... 16

CONCLUSION ............................................................................................................................. 18

Table Of Authorities

Page(s)

Cases

*Association of Pro. Flight Attendants v. Gibbs*, 804 F.2d 318 (5th Cir. 1986) ............................... 9

*Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) .................................................11

*Brumfield v. Dodd*, 749 F.3d 339 (5th Cir. 2014)......................................................................... 13

*City of San Jose v. Trump*, 497 F.Supp.3d 680 (2020).....................................................................11

*Dep't of Com. v. New York*, 588 U.S. 752, 139 S. Ct. 2551, 204 L. Ed. 2d 978 (2019)................ 12

*Dep't of Com. v. U.S. H.R.*, 525 U.S. 316, 119 S. Ct. 765, 142 L. Ed. 2d 797 (1999)....................11

*Edwards v. City of Houston*, 78 F.3d 983 (5th Cir. 1996) ........................................................ 9, 14

*Evenwel v. Abbott*, 578 U.S. 54 (2016) .....................................................................................6, 12

*Federation of Am. Immigr. Reform v. Klutznick*, 486 F.Supp. 564 (D.D.C. 1980) ....................... 12

*In re Franklin Nat. Bank Securities Litig.*, 92 F.R.D. 468 (E.D.N.Y., 1981)................................ 15

*In re Lease Oil Antitrust Litig.*, 570 F.3d 244 (5th Cir. 2009) ........................................................ 8

*La Union del Pueblo Entero v. Abbott*, 29 F.4th 299 (5th Cir. 2022)......................................... 8,13

*League of United Lat. Am. Citizens, Council No. 4434 v. Clements*,

   884 F.2d 185 (5th Cir. 1989) ..................................................................................................... 17

*McDonald v. E.J. Lavino Co.*, 430 F.2d 1065 (5th Cir. 1970) ....................................................... 8

*New Orleans Pub. Serv. v. United Gas Pipe Line Co.*, 732 F.2d 452 (5th Cir. 1984).................... 10

*Ross v. Marshall*, 426 F.3d 745 (5th Cir. 2005) ............................................................................ 9

*Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994)................................................................... 8, 13

*Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th Cir. 1977) ........................................................... 9

*Students for Fair Admissions, Inc. v. University of Tex. at* Austin,

   338 F.R.D. 364 (W.D. Texas 2021) ......................................................................................... 10

*Texas v. United States*, 805 F.3d 653 (5th Cir. 2015) .................................................................. 8, 10

*Trbovich v. United Mine Workers*, 404 U.S. 528 (1972) ................................................................. 13

*Turner v. Cincinnati Ins. Co.*, 9 F.4th 300 (5th Cir. 2021) ............................................................. 17

*United States v. City of L.A.,* 288 F.3d 391 (9th Cir. 2022) ........................................................... 17

*Useche v. Trump*, 2020 WL 6545886 ............................................................................................ 11

*Wal-Mart Stores, Inc.* v. *Tex. Alcoholic Beverage Comm'n,* 834 F.3d ....................................... 9, 10

Statutes

2 U.S.C. § 2a ................................................................................................................................. 17

Rules

Fed. R. Civ. P. 24(a) .............................................................................................. 7, 8, 10, 11, 12

Fed. R. Civ. P. 24(b) ............................................................................................................ 7, 16, 17

## INTRODUCTION

Advancing allegations of constitutional violations, Plaintiffs ask this Court to order the federal government to abandon its longstanding and legally mandated practice of basing apportionment of congressional seats and Electoral College votes on total population in favor of an apportionment count that excludes undocumented persons[1] and nonimmigrant visa holders. To bring about this radical change to deep-rooted practice, Plaintiffs also seek to have this Court order the Census Bureau to include citizenship and immigration related questions on all future censuses.

Proposed Intervenors—the League of Women Voters ("LWV"),[2] the League of Women Voters of Florida ("LWVFL"), and the League of Women Voters of New York State ("LWVNYS") (collectively, "the League")—are nonprofit, nonpartisan, grassroots, community-based membership organizations. Founded in 1920, the League now has over a million members and supporters organized in nearly 800 communities and in every state and the District of Columbia. These Leagues promote political responsibility, voting rights, and democratic practices through education, advocacy, mobilization, and litigation.

---

[1] Proposed Intervenors use the term "undocumented persons" instead of the term, "illegal aliens," which is the term used by Plaintiffs. For purposes of this memorandum, we will presume that when Plaintiffs use the term "illegal aliens," they are referring to noncitizens whose presence is unauthorized under law. However, because Plaintiffs have not defined the term using population categories defined by immigration law, their complaint is ambiguous on its face as to whether they are also referring to noncitizens whose immigration status is pending individual adjudication under Immigration and Nationality Act ("INA") provisions such as, but not limited to, cancellation of removal (INA § 240A), asylum (INA § 208 *et. seq.*), withholding of removal (INA § 241(b)(3)), special immigrant juvenile status (INA § 101(a)(27)(J)); or subject to renewals pursuant to, e.g., Deferred Action for Childhood Arrivals or Temporary Protected Status (INA § 244). We are using the term undocumented persons because it more accurately describes non-citizens in the United States who may have entered without inspection or have a visa that is out of status and do not have a pending individual adjudication as to the lawfulness of their immigration status.

[2] LWV consists of two branches: the League of Women Voters of the United States ("LWVUS") and the League of Women Voters Education Fund ("LWVEF"). LWVUS "encourages informed and active participation in government, works to increase understanding of major public policy issues and influences public policy through education, and advocacy." LWVUS is a 501(c)(4) social welfare organization. *See* LVW, Ways to Give, https://perma.cc/U3VP-HETC. LWVEF "works to register and provide voters with election information through its election resource VOTE411.org, candidate forums, and debates."

All three Proposed Intervenors are membership organizations that accomplish their mission through the power of their members and volunteers. LWVFL and LWVNYS are state affiliates of LWV but are separately incorporated. Members of each state League are also members of LWV. Every state and local League is led by a group of members who serve as president and a board of directors, as well as other positions within each League to help carry out the League's critical mission of empowering voters and defending democracy. Members are the life force of the League.

As part of its mission, the League seeks to encourage voter engagement and participation in the democratic process through its members and volunteers. Core to the League's mission is ensuring that all Americans can participate in our democratic process and all residents are represented in our democracy. The League believes that congressional districts and government legislative bodies should be apportioned on the basis of total population. LWV has opposed efforts to allow apportionment to be based on factors other than total population. Since 1988, LWV has worked with state and local Leagues to encourage full participation in the Census and ensure that subsequent reapportionment and redistricting complies with one person, one vote requirements and the *Voting Rights Act of 1965*. LWV submitted an amicus brief in *Evenwel v. Abbott*, a case in which plaintiffs sought to require states to use a metric other than total population apportionment. 578 U.S. 54, 57 (2016). LWV's brief supported the current practice and policy of using total population when drawing district lines, and the Supreme Court agreed with LWV's position. *Id.* at 74-75.

Ahead of the 2020 Census, LWV encouraged member participation in and provided guidance for state and local Leagues to participate in Complete Count Committees. The League also engaged in efforts to remove a citizenship question from the 2020 Census. LWV, LWVFL, and LWVNYS were each active in opposing the citizenship question by filing amicus briefs at

various stages of litigation, seeking to block the question. LWV also lobbied Congress, engaged the LWVUS Lobby Corps, and activated its grassroots network in a successful engagement campaign in 2018 to raise awareness of the damaging effects the question would have on communities across the country.

Proposed Intervenors seek to intervene in this matter for at least three reasons. First, they seek to protect the interests of their members and their constituents who stand to lose representation in the U.S. Congress and the Electoral College if Plaintiffs prevail in their suit. Second, preserving a reapportionment count based on total population is consistent with Proposed Intervenors' core objective of protecting and promoting democratic practices in the United States, which necessarily involves including all the country's inhabitants in the reapportionment count to ensure that representation and the funds tied to reapportionment reflect the true population of the country without excluding marginalized groups. Third, Proposed Intervenors have an interest in not adding citizenship and immigration questions to the Census because such questions will have the effect of significantly increasing the Census undercount, especially of non-citizens. As organizations committed to safeguarding American democracy, Proposed Intervenors have a strong interest in protecting the accuracy of the Census to ensure federal and state governments fairly reapportion representation and allocate funds between and within States.

Proposed Intervenors satisfy each requirement for intervention as a matter of right under Rule 24(a)(2), and the Court should grant their motion to intervene. Alternatively, the motion should be granted on a permissive basis under Rule 24(b)(1).

## ARGUMENT

**I.    Proposed Intervenors are entitled to intervene as of right.**

Proposed intervenors are entitled to intervene in this matter. Under Rule 24(a)(2), for a party to intervene as of right, the following four requirements must be satisfied: (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; [and] (4) the applicant's interest must be inadequately represented by the existing parties to the suit. *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022) ("La Union") (quoting *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015)).

Although the movant has the burden of establishing the right to intervene, Rule 24(a)'s requirements for intervention are to be "liberally construed," with "doubts resolved in favor of the proposed intervenor." *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 248 (5th Cir. 2009). Federal courts should allow intervention "where no one would be hurt and greater justice could be attained." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (quoting *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970)). Here, Proposed Intervenors satisfy all four intervention requirements.

**A.    This motion is timely.**

Courts consider four factors when evaluating the timeliness of a motion to intervene: "(1) the length of time during which the would-be intervenor actually or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest

8

in the case; (3) the extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely." *Ross v. Marshall*, 426 F.3d 745, 754 (5th Cir. 2005) (quoting *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977). The timeliness inquiry is "concerned only with the prejudice caused by the applicants' delay, not that prejudice which may result if intervention is allowed." *Edwards v. City of Houston*, 78 F.3d 983, 1002 (5th Cir. 1996).

The four timeliness factors weigh in favor of Proposed Intervenors. This motion has been filed less than three months after the filing of the Complaint and well before Defendants intend to or are required to provide their Answer. ECF No. 47 (Defendants' Motion to Stay Proceedings); ECF No. 48 (this Court's March 6, 2025, Order indefinitely staying proceeding, scheduling a status conference for May 2, 2025, and striking deadlines for any responsive briefings until after the lifting of the stay). Further, Proposed Intervenors are seeking to intervene prior to the commencement of discovery, any hearings, or even a scheduling order. Under these circumstances, no existing party to the litigation can credibly suggest that they would be harmed by the timing of the Proposed Intervention. *Compare Wal-Mart*, 834 F.3d at 565 ("Because [movant] sought intervention before discovery progressed and because it did not seek to delay or reconsider phases of the litigation that had already concluded, the [movants] motion was timely."); *Ass'n of Prof'l Flight Attendants v. Gibbs*, 804 F.2d 318 (5th Cir. 1986) (finding motion to intervene timely where five months passed between interest learned and intervention). Further, there are no unusual circumstances that bear on timeliness of intervention. For these reasons, Proposed Intervenors' Motion is timely.

### B. Proposed Intervenors have a legally protectable interest.

"Although 'there is not any clear definition of the nature of the interest that is required for intervention of right [under Rule 24(a)(2)],' the key inquiry is whether the interest alleged is 'legally protectable.'" *Students for Fair Admissions, Inc. v. Univ. of Texas at* Austin, 338 F.R.D. 364 (W.D. Texas 2021) (*quoting New Orleans Pub. Serv, Inc. v. United Gas Pipe Line Co*., 732 F.2d 452, 464 (5th Cir. 1984). The interest requirement is met if the interest "is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue [their] own claim." *Texas v. United States*, 805 F.3d 653, 659 (5th Cir. 2015). "A movant has a legally protectable interest if it is the beneficiary of the regulations at issue." *Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*, 338 F.R.D. 364, 369 (W.D. Tex. 2021) (*citing Wal–Mart*, 834 F.3d at 568–69).

Here, all three Proposed Intervenors easily meet Rule 24(a)(2)'s interest requirement. First, two of the organizations have a significant interest in maintaining the effectiveness of the votes of their state's members. LWVFL and LWVNYS are membership organizations that are run and operated by their members, which include thousands of voters in Florida and New York. Exs. B and C. If Plaintiffs prevail in this suit, LWVFL and LWVNYS members (who are also members of LWV) may have the efficacy of their votes diluted. That is because Florida and New York have been and remain two of the states with the largest numbers of undocumented persons. *See*, www.Pewresearch.org/short-reads/2024/07/22/what-we-know-about-unauthorized-immigrants-living-in-the-us (reporting Pew studies showing that Florida and New York are consistently among the six states with the largest immigrant populations); *see also* Compl. ¶ 66 (alleging that, "The total illegal alien population is at least 4% of the total state population in . . . Florida"). Consequently, if Plaintiffs are correct and prevail on their claims, both these states risk losing one

congressional seat and one Electoral College vote. *See* www.thirdway.org/memo/is-illegal-immigration-really-a-democratic-plot-to-sway-congressional-apportionment (reporting that before the 2020 Census, the Center for Immigration Studies estimated that New York would lose one congressional representative if undocumented immigrants were excluded from the apportionment count, and that the Pew Research Center estimated that exclusion of undocumented immigrants would result in Florida losing a congressional seat).

There is no doubt that diluting the efficacy of the votes of Proposed Intervenors' members implicates a Rule 24(a)(2) interest because this type of harm satisfies the much more stringent requirement for Article III standing. In the context of apportionment, the Supreme Court has consistently held that "voters have standing to challenge an apportionment statute because they are asserting a plain, direct and adequate interest in maintaining the effectiveness of their votes." *Dep't of Com. v. U.S. House of Representatives*, 525 U.S. 316, 331–32, 119 S. Ct. 765, 774, 142 L. Ed. 2d 797 (1999), *citing Baker v. Carr,* 369 U.S. 186, 208, 82 S. Ct. 691, 7 L.Ed.2d 663 (1962) (cleaned up). The Court has also stated that the expected loss of a Representative to the United States Congress because of a change to reapportionment "undoubtedly satisfies the injury-in-fact requirement of Article III standing." *Id.* Consistent with Supreme Court precedent recognizing that voters have standing to challenge reapportionment laws, federal courts have concluded that voters have standing when alleging that "the exclusion of undocumented immigrants from the apportionment base will lead to an undercount of persons in their respective States relative to other states such that their States are highly likely to lose a seat in Congress, thus depriving them of their fair share of representation in the United States House of Representatives." *City of San Jose v. Trump*, 497 F.Supp.3d 680, 700-01 (2020); *see also Useche*, 2020 WL 6545886, at \*4-\*7 ("When

a state anticipates losing a seat in Congress, that diminishment of political representation is a concrete injury suffered by both the state itself and its citizens.") (cleaned up).

Second, this case implicates Proposed Intervenors' Rule 24(a)(2) interest because it relates to core objectives of each of Proposed Intervenors. All three Proposed Intervenors are organizations committed to promoting and defending voting rights and democracy through advocacy, education, mobilization, and litigation. LWVFL and LWVNYS do so in their respective states while LWV does so throughout the United States. This lawsuit—which will have a significant impact on the apportioning of representation in the U.S. House of Representatives and the Electoral College—unambiguously implicates these important organizational interests. Exs. A, B, and C.

Third, as pro-democracy organizations, all three Proposed Intervenors have a strong interest in preserving the accuracy of the Census count. *Id.* This interest is threatened by how Plaintiffs propose to remedy their alleged constitutional violations. Plaintiffs' relief involves compelling the government to include citizenship and immigration questions on the Census. Compl. ¶ 115(d). These questions will likely result in a significant undercount, *see, e.g.*, *Federation of Am. Immigration Reform v. Klutznick*, 486 F.Supp. 564, 568 (D.D.C. 1980) ("[A]ccording to the Bureau[,] any effort to ascertain citizenship will inevitably jeopardize the overall accuracy of the population count"); Brief for Former Directors of the U. S. Census Bureau as *Amici Curiae* in *Evenwel* v. *Abbott*, O. T. 2014, No. 14–940, p. 25 (inquiring about citizenship would "invariably lead to a lower response rate"), which, in turn, will harm representational rights in local, state, and federal elections. *See Dep't of Commerce. v. New York*, 588 U.S. 752, 773, 139 S. Ct. 2551, 2569, 204 L. Ed. 2d 978 (2019).

**C. The disposition of this case may impair Proposed Intervenors' interests.**

To satisfy the third requirement for intervention, Proposed Intervenors "need only show that if they cannot intervene, there is a *possibility* that their interest could be impaired or impeded." *La Union*, 29 F.4th at 307 (emphasis added). As discussed above, if Plaintiffs prevail, there is certainly a possibility that Proposed Intervenors' interests would be impaired. Not only will their members likely have the effectiveness of their votes diluted, their ability to advance their core objectives of promoting voting rights and representational democracy in the United States may also be impaired and impeded.

**D. Proposed Intervenors' interests are not adequately protected.**

While Proposed Intervenors have the burden of demonstrating inadequate representation, the burden is "minimal." *See Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014) (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994). An applicant for intervention satisfies this minimal burden simply by showing that representation of their interest by existing parties "*may* be inadequate." *Sierra Club*, 18 F.3d at 1207 (*citing Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10 (1972) (emphasis added).

Despite the minimal burden of demonstrating inadequacy, in the Fifth Circuit there are two presumptions of adequate representation. *Brumfield*, 749 F.3d at 345. "The first presumption arises when the intervenor has the same ultimate objective as a party to the lawsuit." *La Union*, 29 F.4th at 308 (cleaned up). To overcome this presumption, "the applicant for intervention must show adversity of interest, collusion, or nonfeasance on the part of the existing party." *Id.* (cleaned up). The second presumption "arises when the existing party is a governmental body or officer charged by law with representing the interests of the intervenor." *Id.* This presumption can be overcome

13

"by showing that the intervenor's interest is in fact different from that of the governmental party and that the interest will not be represented by the existing governmental party." *Id.* (cleaned up).

In this case, even assuming both presumptions apply, both are overcome because Proposed Intervenors have divergent interests from the existing parties. *See Edwards*, 78 F.3d at 1005 (holding that a prospective intervenor can establish an adversity of interest if "its interests diverge from the putative representative's interest in a manner germane to the case."). Proposed Intervenors not only directly oppose Plaintiffs' claims, their interests almost certainly diverge from those of Defendants.

On March 3, 2025, Defendants requested a stay in this matter after acknowledging that the current Trump administration may decide against vigorously opposing Plaintiffs suit, which would mean that Defendants' interests no longer converge with those of Proposed Intervenors. *See* ECF No. 46. In their motion, Defendants note that under the previous Trump administration, "President Trump issued a memorandum directing the Secretary of Commerce to take steps 'to exclude from the apportionment base aliens who are not in a lawful immigration status.'" *Id.* (quoting *Presidential Actions: Memorandum on Excluding Illegal Aliens From the Apportionment Base Following the 2020 Census*, Memo for the Sec'y of Commerce (July 21, 2020), https//trumpwhitehouse.archives.gov/presidential-actions/memorandum-excluding-illegal-aliens-apportionment-base-following-2020-census/.). Defendants go on to explain that while the Biden administration issued an executive order revoking President Trump's July 2020 memorandum, on January 20, 2025, the newly re-elected President Trump issued Executive Order 14148, rescinding Biden's revocation. *Id.* Defendants also stated that "New leadership at the Department of Commerce is in the process of onboarding and has not yet had time to determine its approach to . . . this litigation following the issuance of Executive Order 14148." *Id.* The statements in

14

Defendants' Motion for Stay makes it abundantly clear that Defendants' interests are diverging from those of the Proposed Intervenors who are committed to robustly and vigorously opposing Plaintiffs' suit for the reasons discussed above.

In addition to the existing parties, this case also involves other proposed intervenors—two California and three Texas voters and the County of Santa Clara, California ("Other Proposed Intervenors"). Though these Other Proposed Intervenors moved to intervene before Proposed Intervenors, they are in a similar position to Proposed Intervenors because the Court has struck their pending motions to intervene, stating that their motions would be refiled by the Court upon the lifting of the stay. ECF No. 46.

To the extent that the Court must weigh whether Proposed Intervenors' interests diverge from those of the Other Proposed Intervenors, they do in at least two ways. First, the Other Proposed Intervenors have interests that directly relate to harms that would be caused to them in California and Texas if Plaintiffs prevail in this case, while Proposed Intervenors are concerned with protecting against potential harms to voters in Florida and New York and harms that could befall voters in any of the states that stand to lose representation if Plaintiffs prevail.

Second, Proposed Intervenors are seeking to participate in this case to advance broad concerns that relate directly to the goals of their organizations and their organizations' unique history. *Compare In re Franklin Nat'l Bank Securities Litig.*, 92 F.R.D. 468, 472 (E.D.N.Y., 1981) (denying prospective intervenors motion to intervene after a settlement had already been consummated but noting that under other circumstances, allowing intervention by public interest groups might be useful in cases of "great public importance."). The three Proposed Intervenors are connected to each other: they are all the League of Women Voters. The League's history traces back to the women's suffrage movement and the decades long struggle to secure equal political

15

rights for women. Even when women could not vote, it was recognized that they – just like all this country's inhabitants – counted for purposes of representation. That recognition paved the way toward including women in the body politic and creating a more equal and democratic society.

Now, Plaintiffs seek to reverse our country's march toward a more representative democracy by requiring the government to do something it has never done before, which is to exclude entire classes of taxed residents from the census count. Instead of working toward enacting sensible immigration laws to reduce the country's undocumented population, Plaintiffs have chosen to file a lawsuit geared toward creating a permanent underclass of inhabitants who work in our country's fields and factories but are not counted or in any way represented. Proposed Intervenors are concerned that this dangerous precedent may open the door to efforts to exclude or dilute the representational rights of other historically marginalized groups.

To conclude, Proposed Intervenors' strong interest in opposing Plaintiffs' anti-democratic reimagining of how to apportion representation in Congress and the Electoral College would not be adequately represented by either Defendants or the Other Proposed Intervenors. Defendants cannot be counted on to vigorously oppose Plaintiffs' suit and the interests of the Other Proposed Plaintiffs also diverge because they have suffered different harms and none of them share Proposed Intervenors' unique history and perspective on these issues.

**II.     In the alternative, the Court should grant permissive intervention.**

Even if the Court determines that Proposed Intervenors are not entitled to intervene as a matter of right, the Court should exercise its broad discretion to grant permissive intervention. Rule 24(b) provides that a court may permit intervention if (1) the intervenor has a claim or defense that shares with the main action a common question of law or fact, and (2) granting intervention will not unduly delay or prejudice the adjudication of the original parties' rights. Fed. R. Civ. P.

16

24(b). When considering whether to grant permissive intervention, another factor a court should consider is whether Proposed Intervenors "are likely to contribute significantly to the development of the underlying factual issues." *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989). Further, "the idea of 'streamlining' the litigation . . . should not be accomplished at the risk of marginalizing those . . . who have some of the strongest interests in the outcome." *U.S. v. City of Los Angeles, Cal.,* 288 F.3d 391, 404 (9th Cir. 2022). "Permissive intervention is wholly discretionary." *Turner v. Cincinnati Ins. Co.*, 9 F.4th 300, 317 (5th Cir. 2021) (cleaned up)

Here, Proposed Intervenors satisfy the two requirements for permissive intervention. As discussed above, Proposed Intervenors have a defense that shares with the main action a common question of law and fact, and the granting of the intervention will in no way prejudice the adjudication of the original parties' rights. *Supra* Section I(B).

Moreover, Proposed Intervenors are also well placed to contribute significantly toward developing defenses that squarely address the factual and legal premises of Plaintiffs' claims, including but not limited to: (1) the history behind the adoption of Section 2 of the Fourteenth Amendment to the United States Constitution; (2) the history behind the adoption of relevant statutes such as the Reapportionment Act of 1929, a statute that provides, in relevant part, that the President must transmit for purposes of reapportionment "a statement showing the whole number of persons in each State, excluding Indians not taxed, as ascertained under the seventeenth and each subsequent decennial census of the population;" 2 U.S.C. § 2a; (3) the history of democratic practices in liberal democracies and why Plaintiffs' lawsuit proposes a departure from those practices; (4) evidence related to the economic harm Plaintiffs' proposed remedy would cause to the country's inhabitants, especially to those in Florida and New York; and (5) evidence related to

17

how the inclusion of citizenship and immigration questions on the Census will result in an undercount, that, in turn, will have the effect of impairing representational rights in local, state, and federal elections.

## CONCLUSION

For the reasons stated above, the Court should grant Proposed Intervenors' Motion to Intervene, and upon the granting of this Motion, deem as filed Proposed Intervenors' Answer, attached to this Motion as Attachment 5.

Dated: April 10, 2025                    Respectfully submitted by,

/s/ Avner M. Shapiro
Avner M. Shapiro*
Bradley E. Heard*
SOUTHERN POVERTY LAW CENTER
1101 17th St. NW Ste 550
Washington, DC. 20036
(240) 890-1735
avner.shapiro@splcenter.org
bradley.heard@splcenter.org

/s/ Rose Murray
Rose Murray, La. Bar No. 34690
Ahmed K. Soussi, La. Bar No. 38414
SOUTHERN POVERTY LAW CENTER
201 St. Charles Avenue, Suite 2000
New Orleans, LA 70170
(504) 579-3175
rose.murray@splcenter.org
ahmed.soussi@splcenter.org

* Applications for admission *pro hac vice* pending

*Attorneys for Proposed Defendant-Intervenors the National League of Women Voters ("LWV"), the Florida League of Women Voters ("LWVFL"), and the New York League of Women Voters ("LWVNYS")*