IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **THE STATE OF LOUISIANA**, By and through its Attorney General, Elizabeth B. Murrill; <br> **THE STATE OF KANSAS**, By and through its Attorney General, Kris W. Kobach; <br> **THE STATE OF OHIO**, By and through its Attorney General, Dave Yost; and <br> **THE STATE OF WEST VIRGINIA**, By and through its Attorney General, John B. McCuskey <br><br> *Plaintiffs*, <br><br> vs. <br><br> **UNITED STATES DEPARTMENT OF COMMERCE; JEREMY PELTER**, in his official capacity As Acting Secretary of Commerce; <br> **BUREAU OF THE CENSUS**, an agency Within the United States Department of Commerce; and <br> **ROBERT L. SANTOS**, in his official Capacity as Director of the U.S. Census Bureau <br><br> *Defendants*. | Case No.: 6:25-cv-0076-DCJ-DJA <br><br> Judge David C. Joseph <br><br> Magistrate Judge David J. Ayo |

**Declaration of Celina Stewart**
**(Pursuant to 28 U.S.C. § 1746)**

My name is Celina Stewart, and I am over the age of 18 and fully competent to make this declaration. I am submitting this declaration in support of the Motion to Intervene submitted by the League of Women Voters, the League of Women Voters of Florida, and the League of Women Voters of New York State. Under penalty of perjury, I declare the following:

1

### Personal Background

1. I am the Chief Executive Officer of the League of Women Voters. I took this position starting in August 2024. I have been employed by the League of Women Voters since 2018.

### League of Women Voters

2. The League of Women Voters ("LWV" or "the League") is a nonprofit, nonpartisan, grassroots, community-based membership organization headquartered in Washington, D.C., working to protect and expand voting rights and ensure everyone is represented in our democracy. LWV empowers voters and defends democracy through advocacy, education, mobilization, and litigation at the local, state, and national levels. Founded in 1920 as an outgrowth of the struggle to win voting rights for women, the League now has more than a million members and supporters and is organized in nearly 800 communities and in every state and the District of Columbia. This encompasses the importance of counting every person, even if the person is not a citizen, when conducting the Census and apportionment process.

3. The League is made of two entities: the League of Women Voters of the United States ("LWVUS") and the League of Women Voters Education Fund ("LWVEF") (collectively, "LWV" or "the League"). LWVUS encourages informed and active participation in government, works to increase understanding of major public policy issues, and influences public policy through education, mobilization, and advocacy. LWVUS is a 501(c)(4) social welfare organization. LWVEF, a 501(c)(3) nonprofit, works to register voters and provide voters with election information through its election resource VOTE411.org, candidate forums, and debates.

4. The League accomplishes our mission through the power of our members and

2

volunteers. Members of each local and state League are also members of LWV. Every state and local League is led by a group of members who serve as president and a board of directors, as well as other positions within each League to help carry out the League's critical mission of empowering voters and defending democracy. Members are the life force of the League.

5. As part of our mission, the League encourages voter engagement and participation in the democratic process through our members and volunteers. Core to our mission is ensuring all Americans can participate in our democratic process and all residents are represented in our democracy. The League believes that congressional districts and legislative bodies should be apportioned substantially on population.

6. LWV has opposed efforts to allow apportionment to be based on factors other than population. The position is based on a conviction that a population standard is the most equitable way of assuring each vote is of equal value in our representative form of government. League bi-annual conventions have reaffirmed our commitment to conducting the census based on total population. After the 1980 Census, state and local Leagues used the position to work toward equitable apportionment of state and local representative bodies.

7. After the Supreme Court brought apportionment of election districts into the national arena in the early 1960s, the League engaged in advocacy and lobbying at the national and state levels to defeat efforts to circumvent the Court's rulings. This included lobbying against the Dirksen Amendment which would have allowed apportionment of one legislative house based on factors other than total population. Leading up to the 2000 Census, the League lobbied Congress to fully fund and support scientific sampling to ensure the most accurate count of the Census.

8. The League has utilized public education and organizing to promote accurate counting in the US Census. Since 1988, LWVEF has worked with Leagues to encourage full

participation in the census. During the 1990 Census, the League conducted projects to encourage the widest possible participation to ensure the most accurate population count for apportionment and redistricting. In 2009, LWWEF was an official partner of the US Census. We collaborated closely with national partners and provided information to support state and local Leagues in their efforts to minimize an undercount.

9. The League has also fought for equal representation in the courts. In 2016, the League submitted an amicus brief in *Evenwel v. Abbott*, which addressed the question of whether states are required to use metrics other than total population, like registered voters or citizen voting age population, when apportioning state legislative districts. Our brief supported the current practice of drawing lines based on population counts and the Supreme Court upheld that practice.

10. More recently, the League engaged in efforts to remove a citizenship question from the 2020 Census. LWV of New York State (LWVNYS) joined an amicus brief challenging the question's inclusion at the district court level and the U.S. Supreme Court. LWVUS and LWVNYS joined separate amici once the case reached the U.S. Supreme Court as well. Along with litigation, LWVUS lobbied Congress, engaged the LWVUS Lobby Corps, and activated our grassroots network in a successful engagement campaign in 2018 to raise awareness about the damaging effects a citizenship question would have on communities across the country. The Supreme Court agreed that there was no rational basis to include a citizenship question and removed it from the 2020 Census.

11. During the 2020 Census process, the League joined two cases related to an accurate count. The League successfully advocated to extend the timeline for completing the census due to the COVID-19 pandemic to ensure as many people participated as possible. In the second suit, the League filed an amicus brief in three district courts challenging the Executive

4

Order excluding undocumented immigrants from the census. All three courts ruled that the census required a count of every person in the country, regardless of citizenship or ability to vote.

12. Last year, LWVUS opposed the Equal Representation Act, which would have included a citizenship question on the census to exclude noncitizens from the county. We argued doing so would undermine the accuracy of the count, decrease response rates overall, and chill immigrant and minority communities.

### The Importance of Apportionment Based on Total Population

13. Continued protection and implementation of a total population count for apportionment of Congressional seats and electoral college votes—including through the Residence Rule as it implements constitutional and statutory law—is crucial to the work of the League. Apportionment must be based on the total population of all residents to ensure a representative democracy. The courts have never held that citizenship or permanent residency is a requirement for being counted in the Census.

14. League members will also be harmed if apportionment is not based on total population. With members in every state and the District of Columbia, we have many members and voters who could lose critical representation in Congress.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 10, 2025: _____
Celina W. Stewart, Esq.
Chief Executive Office
League of Women Voters